### RODOLPHE MARTY v. HIS CREDITORS.

In general, where joint obligors or creditors unite in a common acquittance, each will be presumed to have received his share, according to the contract. Each stipulates only for himself.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.

BULLARD, J. The syndic of the insolvent having filed his tableau of distribution, sundry oppositions were made to it, one of which only it is necessary to notice; inasmuch, as this is an appeal on the part of the syndic and the liquidators of the Improvement Bank, from a judgment of the Parish Court sustaining that opposition. It is that of J. Severin Marty, son of the insolvent, who claims to be put down as an hypothecary creditor, for a large sum, coming to him as one of the heirs of his mother, who was in community with the insolvent, while he was a minor, and for which he is still accountable. He specifies his claims, as follows: 1st. One-sixth of the slaves sold to Lombard & Cochoy, October 11th, 1838, $2,333 33. 2d. One-sixth of the interest received on same, $121 32. 3d. One-sixth of the amount of gold kept in the *armoire* of the deceased, locked up in a tin box,

$980. There are other items which have not been objected to. The contest in this court has turned principally upon the sums received from Lombard & Cochoy.

In order properly to understand this part of the case, it is necessary to premise, that after the death of Mrs. Marty, and while Joseph Severin Marty was yet a minor, his father, brother, and sister, entered into a contract with Lombard & Cochoy, the substance of which is as follows :—Marty, *pére*, J. B. Marty, and Elizabeth Marty, acting in their own right, and assuming to act for the minor Severin, for whom they engage themselves, (*se portent forts*,) sell to Lombard & Cochoy, the stock and furniture of an hotel, (*fond d'hotel garni*,) commonly called the *Hotel des Etrangers*, together with fourteen slaves, who are named. Marty, *pére*, is declared to be the owner of one undivided half, and that the other half belonged to three of the children of the deceased Mrs. Marty, two of whom were parties to the act, and, together with their father, bind themselves, *in solido*, that the minor heir will ratify the act. The price of the property sold, is declared to be $20,923 32, of which the whole was paid, except $5,231, which the purchasers engage to pay in fifteen months, provided that the said minor, Joseph Severin Marty, having been rendered capable of contracting as a major, &c., shall have ratified purely and simply the present contract; it being well understood that the sum shall not be exigible until this sale shall have been ratified by the minor, having capacity to make a valid ratification. The balance was to bear interest at ten per cent.

In the following year, (1839,) J. Severin Marty having been duly emancipated, appeared before a notary public and two witnesses, and declared, that having been made acquainted with the contract above mentioned, he ratified and confirmed it in all its parts and clauses. The act then proceeds to recite, that, in consequence of this ratification, Lombard for himself and Cochoy, paid down, in presence of the notary and witnesses, to the said Rodolphe Marty, J. B. Marty, Elizabeth Marty, and J. Severin Marty : 1st, the sum of $5231, being the balance due for the price of the slaves sold to them, and which they were not to pay until the act of sale should have been ratified by J. Severin Marty. And, 2d, the sum of $629 16 interest upon the same, for which

sums, amounting to $5860 16, the parties above mentioned, gave a final discharge and release of mortgage. It would appear from the copy of this act in the record, that Marty, *pére*, did not sign the original. It purports to be signed only by the three children. The case has been argued, however, as if it had been signed by all the parties named, and may so be considered by us.

It is contended, on the part of the syndic and of the bank, that the ratification and receipt of J. Severin Marty, prove that he had received all that was coming to him from his mother's estate, or all his interest in the property sold to Lombard & Cochoy. It is urged, on the other hand, that the receipt does not show that he received more than his virile share of the sum last paid, that is to say, one-sixth, or one-fourth, of the sum of $5860, and that the balance is still in the hands of his father, and ought to be paid out of his estate in the hands of the syndic of his creditors.

In order to solve this difficulty, it is necessary to premise, that more than the sixth part, coming to J. Severin Marty, was left in the hands of the purchasers, not to be paid until the contract entered into by his father, brother, and sister should be unconditionally ratified. It is an undisputed principle of our code, that the sale of another's property is null. Now, although the father, brother, and sister, had assumed to represent J. Severin Marty, and bound themselves, *in solido*, that he would ratify their act, yet it did not amount to a sale of his undivided interest in the property. His title was not divested. That being the case, we cannot assume that any part of the price of Severin's share was paid. On the contrary, we are authorized to conclude that the whole remained in the hands of the purchasers, subject to his final ratification of the contract in his name. It appears to us logical to conclude from these premises, that when afterwards, the father and his three children united in a receipt to the purchasers, for the balance left in their hands, each received what he was entitled to. In general, where joint obligees or creditors unite in a common acquittance, each is presumed to have received his share according to the contract. Each one stipulates only for himself. There is no more reason for supposing that the father received any part of what was coming to Severin, than that his sister did. He was no longer under his father's control, in relation to his

contracts, and must be presumed to have acted for himself, and to have received all he had a right to receive.

With respect to the opponent's share of the gold found in a tin box, the court below was satisfied with the proof, and no attempt has been made to discredit the witnesses, by whom its existence and amount were established. No objection has been made to the claim for a part of the price of the three slaves. We conclude that the court erred, in allowing to J. Severin Marty, one-sixth of the price of the furniture and slaves sold to Lombard & Cochoy, and the item of interest.

It is therefore adjudged and decreed, that the judgment of the Parish Court be reversed, so far as it allows to J. Severin Marty, the three items set forth in the judgment, of $2333 33, $1153 88 and of $121 32, and that it be affirmed in all other respects; and that the tableau thus reformed, be homologated and approved. The costs of the appeal to be paid by J. Severin Marty.

*Marsoudet*, for the appellants.

*Soulé*, contra.